UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| THOMAS A. MEDSKER, | ) | CASE NO. 3:05CV1966 |
| | ) | |
| Petitioner, | ) | JUDGE O'MALLEY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE HEMANN |
| | ) | |
| JESSE WILLIAMS, | ) | REPORT AND RECOMMENDATION |
| | ) | Docket #12 |
| Respondent. | ) | |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is respondent's motion to dismiss the petition of Thomas A. Medsker ("Medsker") ("Resp. mot."; Docket #8).  For the reasons given below the magistrate judge recommends that the court grant respondent's motion.

I.

The state appellate court reviewing Medsker's conviction described the following facts as relevant to his case:

> Alice Kinley testified, stating that on December 31, 2002, she and her husband went to a movie at approximately 4:00 or 4:30 p.m. and returned home at approximately 6:45 p.m.  She also testified that upon returning home, she found the door inside the garage open and the house ransacked.  She further testified that the glass louvers on the back door were closed when she and her husband left the home, but they were wide open when they returned.

Several police officers and detectives testified including Sergeant Michael Eilerman, Detective Richard McPherson, Lieutenant Garlock and Officer Kenneth Whitney. Eilerman testified as to the condition of the Kinley residence when he arrived and identified several photographs taken of the home after the burglary.  Eilerman further testified that the phone service to the home had been disconnected at the outside box.  Finally, Eilerman testified that he contacted McPherson, a detective for the Shawnee Township Police Department, after Mrs. Kinley noticed some fingerprints on the louvered glass door.

McPherson testified that he looked through the house with a flashlight for fingerprints on items that were capable of being fingerprinted.  He also testified that there were several footprints on the carpet in the house but that they had no distinguishing qualities.  McPherson also testified that he found usable prints on the glass of the louvered door and that it appeared that glass was "opened up and the hand was reached inside and the fingers curled around the glass in an attempt to pull th[e] glass out. "However, there was a storm door behind the louvers preventing entry through that door.  While McPherson identified other prints throughout the house they were smudged and not usable to him.  However, McPherson identified, dusted and photographed usable fingerprints on the louver door.   Finally, McPherson testified that Medsker became a suspect in this burglary after it was noted by an area detective that Medsker had committed similar burglaries in the past.  Consequently, McPherson suggested that the fingerprint analyst compare Medsker's fingerprint card to the fingerprints found at the Kinley residence.

Garlock, a fingerprint analyst from the Allen County Sheriff's Department, testified that he compared the fingerprints on the eighth fingerprint card taken from the louver door on the Kinley residence with that of the print of the left ring finger of Medsker. Garlock testified that he only examined the eighth fingerprint card because the eighth card had the best quality latent prints.  Garlock then testified that it was his opinion that the prints on the eighth fingerprint card matched Medsker's fingerprints. Garlock explained the comparison of the fingerprints on an enlarged photograph of the two prints which indicated at least fifteen matching points.

Whitney, an identification officer from the Lima Police Department, was called by the Allen County Sheriff's Department to compare the prints of Medsker and those found at the Kinley residence.  Whitney testified that he had been an identification officer for thirteen years and was designated by that court as an expert in fingerprint analysis in previous cases.  Whitney testified that he was given all eight fingerprint cards to compare with Medsker's prints but was not told that an officer had previously matched the prints.  Whitney further testified that he used the eighth fingerprint card because it was of the best quality and that after comparing the eighth card to Medsker's fingerprints, he found that the index and ring finger prints on the eighth card came from Medsker.

2

Krista Rudder also testified for the State.  She testified that shortly before Christmas 2002, she drove from Celina to Lima to get high on crack cocaine.  However, on her way back to Celina, her car stopped working in front of the Kinley residence.  Krista pulled the car into the driveway and since the Kinley's were not home,  left a note on the windshield with her name and phone number.   She called for a ride from the neighbor's house and returned to Lima to smoke crack. Sometime later, Krista was walking down the street in Lima, limping as a result of a sprained ankle.  Krista testified that Medsker stopped to offer her a ride,  and they got high for three or four days.  On December 31, 2002, Medsker drove her to pick up her car from the Kinley's driveway.  Krista testified that her car was no longer in the driveway and that she and Medsker left the driveway without Medsker leaving the car.

Medsker and three alibi witnesses, Shannon, Stephanie and Cindy Gaberdiel, testified for the defense.  Medsker asserts that he was at the Gaberdiel home on December 31, 2002 with the grandmother of his two children, Cindy, and her two daughters, Shannon, age sixteen, and Stephanie, age thirteen.  Cindy, Stephanie and Shannon testified that Medsker was at their home continuously from approximately 12:00 noon on December 31,  2002, until he left for work at 7:00 a.m. on January 1, 2003.  Shannon and Cindy testified that they watched movies that day; however, Stephanie stated that they did not watch any movies that day.

Medsker testified that while he was at the Gaberdiel's house most of December 31, 2002, he left a few times to go down the street.  He further testified that he was at the Gaberdiel's house between 2:30 p.m. until 7:00 p.m. on December 31, 2002.  Medsker stated that he picked up Krista Rudder on either December 29 or 30, 2002.  He further testified that after he picked up Rudder,  he took her to where she had left her car on Spencerville Road and that when they did not find her car; Medsker went up and knocked on the door.  He stated that he knocked on two doors and rang the doorbell on a third.  Medsker also testified that it is possible that the fingerprint found on the louver door could have come from him when he knocked on the door.  Finally,  Medsker testified that he smokes crack cocaine and that he has pled guilty to two previous burglaries.  Additionally, Medsker admitted that he committed twelve or fourteen other burglaries for which he did not plea.

*State of Ohio v. Medsker,* 2004 WL 324879, at *1-*2 (Ohio App. Feb. 23, 2004 ).

The February 2003 term of the Allen County grand jury indicted Medsker on one count of burglary.  Medsker pleaded not guilty to the charge, and a jury found Medsker guilty of burglary on June 12, 2003.  The trial court then sentenced him to a term of eight years' imprisonment.  Because Medsker committed the burglary while on post-release

control, the court ordered that his burglary sentence be served consecutively to any sentence imposed due to his community control violation.  The court also ordered that after Medsker served his prison term he would be subject to post release control for up to three years.

On July 8, 2003, Medsker filed in the state appellate court a notice of appeal. Medsker asserted four assignments of error in his appellate brief:

> ASSIGNMENT OF ERROR ONE:  The Defendant was deprived of his right to a fair trial and effective assistance of counsel by the many errors and omissions of trial counsel.

> ASSIGNMENT OF ERROR TWO:  The Defendant was deprived of his right to a fair trial due to the misconduct of the State of Ohio in eliciting testimony regarding the reputation of Defense witnesses that had no bearing on character for truthfulness and which violated, on it [sic] face, several provisions of the Ohio Rules of Evidence.

> ASSIGNMENT OF ERROR THREE:  The Court erred in sentencing the Defendant to the maximum term of incarceration since the Defendant did not commit the worst form of the offense.

> ASSIGNMENT OF ERROR FOUR:  The verdict was against the manifest weight of the evidence.

On February 23, 2004 the State Appellate Court overruled all four assignments of error and affirmed the judgment of the trial court.  *State of Ohio v. Medsker,* 2004 WL 324879 (Ohio App. Feb. 23, 2004).

On May 24, 2004 Medsker filed in the state appellate court an application for re-opening his direct appeal pursuant to Ohio App. R. 26(B), alleging ineffective assistance of appellate counsel for failing to raise certain alleged instances of ineffective assistance of trial counsel.  On June 23, 2004 the appellate court denied Medsker's application, finding that the application raised the same claims of ineffective assistance of trial counsel that had been found to be without merit on direct appeal.  There is no record that Medsker appealed

4

this judgment to the Ohio Supreme Court.

Medsker filed a pro-se notice of appeal in the Ohio Supreme Court on April 8, 2004, asserting five propositions of law:

**Proposition of Law No. 1:**  Where a criminal Defendant claims that a conviction is contrary to the manifest weight of the evidence, is secured with insufficient evidence, or both, the Court of Appeals must review the entire record on appeal, and its opinion must accurately reflect the record on appeal.

**Proposition of Law No. 2:**  When during the course of trial, a prosecutor (A) elicits testimony regarding the reputation of defense witnesses that had no bearing on character for the truthfulness and which violated, on its face, several provision of the Ohio Rules of Evidence; (B) to elicit [sic] testimony from the accused on cross examination that he had agreed to a plea bargain in a previous case to the admittal of (12) unsolved burglaries, but was only convicted of one (1) of the said burglaries; (C) eliciting testimony from Defendant and defense alibi witness of extraneous drug use that had no bearing on the case at trial; (D) comments of [sic] Defendant's pre-trial silence in closing arguments, as if the Defendant did not speak because he was formulating lies for an alibi, the conviction must be reversed on grounds the conviction was obtained by prosecutorial misconduct, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and in violation of Article #1 section #16, of the Ohio Constitution.

**Proposition of Law No. 3:**  Where a conviction is obtained solely by circumstantial evidence, in which that evidence consists primarily of building inferences upon inferences, when the underlying evidence is insufficient, unproven or disputed and led to a guilty verdict against the manifest weight of the evidence, the conviction must be reversed.

**Proposition of Law No. 4:**  When during the course of trial appointed defense counsel commits numerous acts of <u>not</u> upholding a professional standard of representation and in doing so deprives a defendant of a fair trial with effective assistance of counsel,  who would and should have objected at trial at appropriate times when the prosecutor solicits character evidence in cross examinations of Defendant and alibi witness, this type of conviction must be reversed on grounds that the conviction was obtained by ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments of the United States Constitution and of the Ohio Constitution Article 1 section 10.

**Proposition of Law No. 5:**  Where the trial court sentenced the defendant to the maximum term of incarceration, but the defendant did not commit the worst form of the offense,  or (1) the record does not support the sentencing court's findings under

5

division (B) or (D) of section 2929.13 or division (E) (4) of section 2929.14, or division (H) of section 2929.20 of the Ohio Revised Code, whichever is relevant, or (2) that the sentencing Court gave a sentence that is otherwise contrary to law, the trial court violates Ohio State statutes and the sentence must be reversed, reduced or remanded.

(Capitalization, spelling, punctuation, and emphasis altered from original.)  On July 14, 2004 the Ohio Supreme Court dismissed the appeal as not involving any substantial constitutional question.

On February 17, 2004 Medsker filed in the trial court a petition for postconviction relief, asserting two grounds for relief:  (1) ineffective assistance of counsel at both pre-trial and trial stages and (2) prosecutorial misconduct.  On February 24, 2004 the trial court denied Medsker's petition for postconviction relief.  The court dismissed most of Medsker's arguments on the ground that they were barred *res judicata*, asserting that they represented claims that were or could have been raised on direct appeal. The court also found that two of Medsker's arguments for ineffective assistance of counsel, the failure of trial counsel to use a "replica door" and trial counsel's failure to interview Rudder prior to trial, were not barred by *res judicata* but failed because Medsker did not present credible evidence demonstrating that these alleged errors prejudiced him or denied him any constitutionally-protected right.

Medsker appealed the trial court's denial of his petition for postconviction relief to the state appellate court, asserting one assignment of error:  The trial court committed an error of law by denying appellant's petition for post conviction relief.  The state appellate court overruled Medsker's assignment of error on August 16, 2004.  *State of Ohio v. Medsker,* 2004 WL 1813099 (Ohio App. Aug. 16, 2004).  Medsker did not appeal the state appellate court's judgment to the Ohio Supreme Court.

6

Medsker filed a petition for a writ of habeas corpus on Aug 10, 2005.  Medsker

asserts the following grounds for relief:

**FIRST GROUND FOR RELIEF**
PETITIONER'S COUNSEL WAS INEFFECTIVE PRIOR TO, AND DURING TRIAL,
DEPRIVING PETITIONER OF HIS SIXTH AMENDMENT CONSTITUTIONAL
RIGHTS.

**SECOND GROUND FOR RELIEF**
PETITIONER'S APPELLATE COUNSEL HAD A CONFLICT OF INTEREST WITH
PETITIONER WHICH RESULTED IN AN INEFFECTIVE APPEAL.

**THIRD GROUND FOR RELIEF**
PETITIONER'S COUNSEL WAS INEFFECTIVE AT SENTENCING BY FAILING TO
RAISE ANY OF THE STATUTORY FACTORS IN FAVOR OF PETITIONER.

**FOURTH GROUND FOR RELIEF**
THE SENTENCE IMPOSED UPON PETITIONER WAS AGAINST THE
SENTENCING GUIDELINES, AND WAS DISPROPORTIONATE TO THE CRIME.

**FIFTH GROUND FOR RELIEF**
THE EVIDENCE PRESENTED AT TRIAL WAS NOT SUFFICIENT TO CONVICT
PETITIONER OF THIS CRIME.

**SIXTH GROUND FOR RELIEF**
THE JUDGE'S INSTRUCTIONS TO THE JURY WERE TOO VAGUE AND
INCONSISE [SIC] FOR THE JURY TO REACH THE PROPER VERDICT.

**SEVENTH GROUND FOR RELIEF**
THE PROSECUTOR WITHHELD EVIDENCE IN VIOLATION OF CRIMINAL RULE
16, CONSTITUTING PROSECUTORIAL MISCONDUCT.

Respondent filed an answer on November 4, 2005 (Docket # 8).  Thus the petition

is ready for decision.

II.

A.    *Jurisdiction*

Medsker is in the custody of Allen County Correctional Institution in Lima, Ohio.

Medsker filed his writ of habeas corpus in the Northern District of Ohio and raises claims

7

regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.... Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241 (a)&(d). This court has jurisdiction over Medsker's claims.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings or when the state proceedings were seriously defective or inadequately recorded. *See* 28 U.S.C. § 2254(d).  There is no need for an evidentiary hearing in the instant case.  All of Medsker's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

Prior to seeking review of conviction by federal habeas corpus, a state prisoner must exhaust all possible state remedies or have no remaining state remedies.  28 U.S.C. § 2254(b) and (c); *Castille v. Peoples,* 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 D.2d 790, 793 (6th Cir. 1991).  The prisoner must fairly present any claims to the state in a constitutional context.  *Anderson v. Harless,* 489 U.S. 4 (1982); *Picard v. Connor,* 404 U.S. 270 (1971); *Shoultes v. Laidlaw,* 886 F.2d 114, 117 (6th Cir. 1989).  The exhaustion requirement is satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all of the petitioner's claims.

8

*Manning v. Alexander,* 912 F.2d 878, 881-83 (6th Cir. 1990).

Medsker has exhausted direct appeals for all his claims.  Because Medsker has no remaining state remedies, his claims have been exhausted.

D.    *Procedural default*

Respondent argues that Medsker has procedurally defaulted part of his first ground for relief and all of his second, third, fifth, sixth, and seventh grounds for relief.  Procedural default occurs when a petitioner fails to present fairly his constitutional claims to the highest state court in a federal constitutional context.  *Anderson*, 489 U.S. 4; *Picard,* 404 U.S. 270.  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes,*  433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

1.    *Procedural default and Medsker's first ground for relief*

Respondent divides Medsker's first claim of ineffective assistance of trial counsel into twelve subclaims and argues that all but one of those subclaims are procedurally defaulted.  Respondent describes the twelve subclaims asserted in Medsker's first ground for relief as follows:  (1) failure  to interview Rudder prior to trial; (2) failure to communicate with petitioner prior to trial; (3) introducing Medsker's prior criminal history at trial; (4) pressuring Medsker to waive his right to a speedy trial; (5) providing inaccurate information

9

to Medsker prior to trial; (6) failure to object to the prosecution's mention of Medsker's past convictions during voir dire or to the prosecution's use of "other acts" as evidence; (7) failure to ask Rudder if she had been promised anything in exchange for her testimony; (8) failure to inquire about other individuals in Rudder's car; (9) failure to challenge the State's fingerprint evidence and trial counsel's praise of the State's fingerprint expert; (10) failure to object to rebuttal testimony of Detective McPheron regarding drug usage and prostitution by Gaberdiel; (11)  failure to seek jury instructions on lesser degree burglary offense; and (12) failure to move for acquittal at the close of the State's case.

Medsker raised some of these subclaims in the state appellate court on direct appeal and some of these subclaims in the trial court in his petition for postconviction relief.  Other subclaims were not raised in any state court.  Medsker properly raised in both the state appellate court and in the Ohio Supreme Court only subclaim 10, alleging that trial counsel was ineffective because he failed to object to the rebuttal testimony of Detective McPheron regarding drug usage and prostitution by Gaberdiel.  Subclaim 10, therefore, is the only subclaim of Medsker's first ground for relief that he fairly presented to the highest court in Ohio.

Medsker has procedurally defaulted all of his first ground for relief except subclaim 10.  He does not demonstrate cause and prejudice for this default or demonstrate that failure to consider his defaulted subclaims will result in a fundamental miscarriage of justice.  For these reasons the magistrate judge recommends that the court dismiss as procedurally defaulted all of Medsker's first ground for relief except subclaim 10, Medsker's claim that trial counsel was ineffective because he failed to object  to the rebuttal testimony of Detective McPheron regarding drug usage and prostitution by Gaberdiel.

10

      *2.    Procedural default and Medsker's second, third, sixth and seventh ground for relief.*

Respondent argues that Medsker procedurally defaulted his second, third, sixth, and seventh grounds for relief because he failed to present these claims to the Ohio Supreme Court.  Medsker did not raise any of these claims in that court, and he could have raised them in his memorandum in support of jurisdiction on direct appeal or in a memorandum in support of jurisdiction on appeal of the denial of his motion to reopen his direct appeal pursuant to Ohio App. R. 26(B).

Medsker has procedurally defaulted his second, third, sixth, and seventh grounds for relief by failing fairly to present them to the highest court in the state.  He does not demonstrate cause and prejudice for this default or demonstrate that failure to consider his defaulted claims will result in a fundamental miscarriage of justice.  For these reasons the magistrate judge recommends that the court dismiss Medsker's second, third, sixth and seventh grounds for relief as procedurally defaulted.

      *3.    Procedural default and Medsker's fifth ground for relief*

Respondent argues that Medsker's fifth ground for relief is procedurally defaulted because it was not fairly presented to the state appellate court or to the Ohio Supreme Court.  In his fifth ground for relief Medsker argues that there was insufficient evidence to sustain a conviction.  Medsker argued a similar claim to the state courts, asserting that the verdict was against the manifest weight of the evidence.  However, these are two distinct claims.

The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to

constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A habeas court resolves all conflicting inferences in favor of the prosecution and does not weigh the credibility of witnesses.  *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  The evidence need not be sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt.  *Fuller v. Anderson*, 662 F.2d 420, 435 (6th Cir. 1981), *cert. denied*, 455 U.S. 1028 (1982).  Any conviction based upon evidence sufficient to convince any rational trier of fact of the essential elements of the crime without a reasonable doubt offends the due process clause and may serve as grounds for habeas relief.

A claim that a conviction is against the manifest weight of the evidence differs from a claim that a conviction was based on insufficient evidence:

> With respect to sufficiency of the evidence, "'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law."  Black's Law Dictionary (6 Ed.1990) 1433.  See, also, Crim. R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction).  In essence, sufficiency is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict is a question of law.  *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148.  In addition, a conviction based on legally insufficient evidence constitutes a denial of due process.  *Tibbs v. Florida* (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.  *Robinson, supra,* 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149.  Weight of the evidence concerns "the

inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"  (Emphasis added.) Black's, *supra,* at 1594.

When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony.  *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661.  See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*State of Ohio v. Thompkins*, 78 Ohio St. 3d 380, 387-88, 678 N.E.2d 541, 546-47 (1997).

*See also Tibbs v. Florida*, 457 U.S. 31, 37-38, 38 n.11 (1982); *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).

Medsker argued in the state appellate court and in the Ohio Supreme Court that his conviction was against the manifest weight of the evidence.  He did not argue in any state court that there was insufficient evidence to sustain his conviction.  Thus, Medsker has procedurally defaulted his fifth ground for relief by failing fairly to present it to the highest court in the state.  He does not demonstrate cause and prejudice for this default or demonstrate that failure to consider his defaulted claim will result in a fundamental miscarriage of justice.  For these reasons the magistrate judge recommends that the court dismiss Medsker's fifth ground for relief as procedurally defaulted.

III.

13

The AEDPA altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Williams v. Taylor,* 529 U.S. 362, 379-90 (2000); *Miller v. Francis,* 269 F.3d 609, 613-14 (6th Cir. 2001). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Harris v. Stovall,* 212 F.3d 940, 943-44 (6th Cir. 2000).

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. §2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* The magistrate judge will consider Medsker's remaining claims under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

A.  *Petitioner's first ground for relief*

Medsker asserts in the remaining subclaim in his first ground for relief that his trial counsel was ineffective because he failed to object to the rebuttal testimony of Detective

McPheron regarding drug usage by Gaberdiel as hearsay.  Respondent denies that this constitutes ineffective assistance of counsel.

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997). A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms."  *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.   *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101

15

(1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."  *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation."  *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

16

Medsker's remaining claim of ineffective assistance of counsel is based on trial counsel's failure to object to rebuttal testimony from Detective McPheron about Gaberdiel. Medsker contends that because McPheron had no personal knowledge of Gaberdiel's prostitution or drug usage, trial counsel should have objected to McPheron's testimony as hearsay. The state appellate court hearing Medsker's direct appeal made the following finding of fact regarding this claim:

> Finally, Medsker argues that his trial counsel should have objected to the introduction by the State of alleged improper character testimony given by McPheron regarding Shannon Gaberdiel prostituting herself for crack cocaine. However, Shannon opened the door to this line of questioning through her own unsolicited testimony, and in any event, Medsker's trial attorney did object to some of the testimony provided. Moreover, as both Cindy and Stephanie both provided the same alibi for Medsker as Shannon provided, we cannot find that his counsel's conduct fell below an objective standard of reasonableness or that the outcome would have been different had this testimony not been introduced at trial. As we cannot find that Medsker's trial attorney was ineffective, his first assignment of error is overruled.

*State of Ohio v. Medsker,* 2004 WL 324879 (Ohio App. Feb. 23, 2004 ).

The state appellate court found both that Medsker's counsel's performance was not objectively deficient and that Medsker was not prejudiced by counsel's errors. Medsker must overcome by clear and convincing evidence the presumption that these factual findings are correct. Medsker's petition makes several arguments that counsel's failure to object was objectively deficient representation, but he provides no evidence that he was prejudiced by trial counsel's failure to object. Having failed to demonstrate by clear and convincing evidence that the trial court erred in finding that Medsker was not prejudiced by counsel's alleged error, Medsker cannot obtain relief on his first ground for relief because he cannot satisfy the second prong of the *Strickland* test. For this reason the magistrate judge recommends that the court dismiss the remainder of Medsker's first ground for relief.

17

B.      *Petitioner's fourth ground for relief*

In his fourth ground for relief, Medsker asserts that "the sentence imposed upon Petitioner is disproportionate to the crime committed and the purposes of felony sentencing under Ohio law." Petition (Docket #1), p. 32.  In arguing in support of this contention, Medsker cites Ohio law only, and he does not claim that his sentence violated the federal Constitution or federal law.

In reviewing the decision of state courts, a federal habeas court does not consider questions of state law:

> "[F]ederal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers,* 497 U.S. 764 (1990);  see also *Pulley v. Harris,* 465 U.S. 37, 41 (1984). . . .  [I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Thus, whether the trial court erred in sentencing Medsker to the maximum period contemplated by state guidelines is  beyond the jurisdiction of this court.  For this reason the magistrate judge recommends that the court dismiss Medsker's fourth ground for relief.

IV

For the foregoing reasons the magistrate judge recommends that the court dismiss Medsker's petition for a federal writ of habeas corpus.

Date:  December 22, 2005          /s/Patricia A. Hemann
                                  Patricia A. Hemann
                                  United States Magistrate Judge

**OBJECTIONS**

18

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).